UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:23-CV-24819

ELI M. BLATT, individually and derivatively
on behalf of Goldner Blatt Investments, LLC,

    Plaintiff,

v.

MARC J. GOLDNER, RACHEL KORSEN,
SIMON DIVILOV, and THE DHARMA
INITIATIVE, LLC, a Delaware company,

    Defendants and Counterclaim/Third
    Party Complaint Plaintiffs,

v.

ELI M. BLATT,

    Counterclaim Defendant, and

MegaCap Capital, LLC, MegaCap Funds, LP,
MegaCap Funds, LP – Tech Holding, MegaCap
Funds, LP – Tech I, Little Prince Equity, LLC,
Thibaut Denonain, Michael Elkins, Wayaca, LLC,
Flow, Inc., BitSource, LLC, JPMorgan Chase & Co.,
and Bank of America Corporation,

    Third Party Defendants.
_____/

**DEFENDANTS' OPPOSITION TO MEGACAP CAPITAL, LLC'S MOTION TO
DISMISS THE COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendants and Counterclaim/Third Party Complaint Plaintiffs, Marc J. Goldner ("Mr. Goldner"), Rachel Korsen ("Ms. Korsen"), Simon Divilov ("Mr. Divilov"), and The Dharma Initiative, LLC ("Dharma") (collectively, "Defendants"), by and through undersigned counsel, respectfully submit this Opposition to MegaCap Capital, LLC ("MCC")'s Motion to Dismiss the

Counterclaim and Third-Party Complaint (the "Motion"), and in support state as follows:

## I. INTRODUCTION

The Counterclaim filed by Defendants is a methodically plead, well-supported, and thoroughly documented presentation of facts and claims arising directly from Mr. Blatt's myriad misconduct, misrepresentations, and breaches of fiduciary duties. Similar to Mr. Blatt's Motion to Dismiss, MCC's Motion is vague, conclusory, and procedurally flawed, as well as factually inaccurate and self-defeating. MCC's Motion to Dismiss is legally insufficient, riddled with contradictions, unsupported characterizations, and transparent attempts to avoid the inevitable reckoning for Mr. Blatt's misconduct. Mr. Blatt, unilaterally without authorization, on behalf of MCC, asks this Court to dismiss a detailed Counterclaim that contains what Mr. Blatt's own complaints never did: factual clarity, legal specificity, and corroborating exhibits. The Motion to Dismiss should be denied.

## II. PROCEDURAL BACKGROUND

The Counterclaim and Third-Party Complaint filed by Mr. Goldner spans **217** pages (not 237 as MCC states), supported by 52 exhibits, and meticulously details the events leading to Mr. Blatt's unenforceable and unconscionable improper self-appointment as sole manager and Member of MegaCap Capital, LLC ("MCC"), the illegal removal of Mr. Goldner, and a wide-ranging pattern of fraudulent misconduct. Mr. Blatt filed three complaints in this case—each of which containing new contradictions with the others—and a fourth in a separate matter (MegaCap Capital LLC v. Goldner et al., 1:24-cv-24385), which was dismissed *sua sponte* by Judge K. Michael Moore for failure to comply with a pretrial order (see Dkt. Entry 14 on Jan. 31, 2025). Unlike the dismissed filings of Mr. Blatt and the contentions of MCC's Motion to Dismiss, the Counterclaim presents an organized factual record, grounded in over 50 exhibits, including agreements,

resolutions, email admissions, bank records, and separately a sworn statement by way of Mr. Goldner's Affidavit in the Motion for Preliminary Injunction.

## III. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must accept the Counterclaim's well-pleaded allegations as true and draw all reasonable inferences in favor of the non-movant. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Dismissal is appropriate *only* where the complaint fails to state a claim upon which relief may be granted. The standard under Rule 12(b)(6) requires only that the claim state enough facts to "raise a right to relief above the speculative level" *Id.* Under *Iqbal*, the sufficiency of a complaint is not a "fact-based" question of law. As an initial matter, MCC's argument that there are factual misrepresentations has nothing to do with the heightened pleading standard requirements of *Twombly* and *Iqbal* and is misquoted. Counterclaim Plaintiffs need only to plead a complaint with sufficient factual allegations, which they have done, that when taken as true, state a plausible claim for relief.

When evaluating a motion to dismiss, the court must accept all well-pled facts as true and draw all reasonable inferences in favor of the non-moving party. Here, the Counterclaim easily satisfies that burden. For fraud-based claims, Rule 9(b) requires that the claimant allege "the who, what, when, where, and how" of the alleged misconduct, which, as shown below, the Counterclaim does. Further, MCC claims that the Counterclaim "is replete with unfounded assertions" and states that there are "[v]ague, [c]onsclusory, and [c]onflicting [a]llegations" but fails to state what those vague, conclusory and conflicting allegations are.

IV.   **ARGUMENT**

Merely raising a statement in a Motion to Dismiss that something is vague, conclusory, or conflicting is insufficient without providing details of such defects. Instead of remaining within the four corners of the Counterclaim and Third Party Complaint as required, MCC alleges the following new facts from outside the Counterclaim, claiming without evidence while attempting to deprive Mr. Goldner of his ability to properly answer to them, that: (1) The option and loan agreement and assignment agreements were not executed and shares were not put into a trust;[1] (2) Facts from a dismissed case and its' Exhibits must be incorporated and considered;[2] (3) Exhibit S of Original Filed Complaint must be considered (implicitly expecting Mr. Goldner to litigate against every amended version of Mr. Blatt's, not just MCC's dismissed complaint, Complaints in an Opposition to a Motion to Dismiss);[3] (4) References to Exhibit F of the Second Amended Complaint must be considered;[4] (5) Mr. Blatt executed the February 2023 Resolutions and related agreements[5] under duress;[6] (6) suspiciously absent from MCC's Motion to Dismiss, but present in Mr. Blatt's Motion to Dismiss is that MegaCap has a "third member";[7] and (7) Mr. Goldner evaded service in a case now admitted to being related while being filed my Mr. Blatt, on behalf of MCC, as unrelated and which was dismissed due to their non-compliance with the Honorable Court's scheduling order.[8]

---

[1] See: MCC's Motion to Dismiss Page 7
[2] See: MCC's Motion to Dismiss Page 9
[3] See: MCC's Motion to Dismiss Page 9
[4] See: MCC's Motion to Dismiss Page 11
[5] In fact, Mr. Blatt attempts to deceive the court by misleading the court by way of omission. Mr. Blatt purposely leaves out the title of the February 2023 Resolutions shown on page 498 of Exhibit 1 titled, "MegaCap Resolutions (General Resolutions and Option & Loan…"
[6] See: MCC's Motion to Dismiss Page 13
[7] See: Mr. Blatt's Motion to Dismiss Page 16
[8] See: MCC's Motion to Dismiss Page 18

MCC and Mr. Blatt lean so heavily on these impermissibly added facts in their Motions to Dismiss that the entire premise and thrust of MCC's Motion falls away with their exclusion. As such, any aspect related to the February 2023 Resolution and related agreements being invalid, that Mr. Blatt was under duress, assertions that Mr. Goldner is not a Class A Member of MegaCap, the valuation of GBI being $0 due to no assets being transferred into GBI[9], the existence of a third Member of MegaCap, and Mr. Goldner's alleged evasion of service are wholly without foundation and amount to a violation of the procedural rules governing Motions to Dismiss. Moreover, MCC fails to address the underlying claims entirely. While arguing that the entire Counterclaim should be dismissed, MCC is silent on, *inter alia*, Mr. Blatt's fatal non-compliances with the MegaCap Capital Operating Agreement ("MCC OA"); the theft of Mr. Goldner's property, assets, money, and rights; Mr. Blatt's libelous statements against Mr. Goldner; Mr. Blatt's breaches with regards to the Non-Fungible Tokens and Bitcoin miners; Mr. Blatt's misappropriation of trade secrets; and their collective fraud on Mr. Goldner, entailing a rather gross overreach in their request for total dismissal. Therefore, the vague and conclusory arguments that the Counterclaim is, itself, vague and lacks sufficient detail to sustain its counts ring hollow and is unsupported.

MCC's outrageous argument that "an overwhelming majority of the allegations have no relevance…and exist for the sole purpose of disparagement" is absolutely disproven by Mr. Blatt's own Motion to Strike. In Mr. Blatt's pending Motion to Strike, Mr. Blatt asks the court to strike "Paragraphs 403, 605-625, 908-909, 938-941, 1027 and Exhibits 30-32 and 47" –Mr. Blatt is asking the Court to strike roughly 27 paragraphs and 2 exhibits (less than 2% of the Counterclaim). By Mr. Blatt's own admission, it is therefore an impossibility that an "overwhelming majority" of the Counterclaim is purposefully scandalous when he only chose to attack 2% of it. Notably, no

---

[9] MCC's inclusion of GBI related issues further proves the interconnectedness between the two entities.

Motion to Strike was filed on behalf of MCC. To argue that Counterclaim Plaintiffs "were fully on notice of their offense prior to filing the Counterclaim" is nonsensical considering the Report and Recommendation was against and addressed to Mr. Blatt and not Counterclaim Plaintiffs.

MCC references *Barmapov v Amuial* in support of the dismissal of a case with prejudice for being a shotgun pleading but even admits in their own statement that that was dismissal with prejudice of a **"second amended complaint"** – Counterclaim Plaintiffs have not even had **one** opportunity to amend, yet Mr. Blatt has been given an opportunity to file **three** separate complaints – not including the fourth complaint in the MegaCap parallel case that was dismissed. MCC references *Turner v. Williams* which is irrelevant as the party had multiple occasions to amend the complaint before the court deemed it a shotgun pleading. *Turner* does not apply to the current procedural posture of this case.

MCC's argument that Counterclaim Plaintiff's claims are meant to harass under Rule 11 is absurd considering that Mr. Blatt has stolen nearly a million dollars of value and derivative interest from Mr. Goldner. Further, MCC fails to recognize that in ¶154-160, the specificity surrounding those events are crucial to give key context to Mr. Blatt's own misstatements in his Second Amended Complaint Paragraph 24(g). The claims and allegations themselves tie directly to the causes of action. The Counterclaim meets both standards with abundant factual support.

**Counterclaim Pleads Fraud with Specificity and Meets Rule 9(b) and Satisfies Rule 8**

MCC's primary argument is that the fraud claims fail under Rule 9(b). Each claim is supported by clear facts: names, dates, exhibits, and defined legal theories. Unlike Mr. Blatt's own complaints (which the Court found to be a shotgun pleading and vague), the Counterclaim delineates each party's role in the harm. In fact, MCC fails to even identify the heightened pleading standard for fraud-based claims in their Motion to Dismiss. The fraud related claims (Counts IX-

6

XI) are pled with specificity: Mr. Blatt's misrepresentations about entity control, fee structure, and deal origins are all documented (see Exhibits 1, 4, 5, 6, 24, 35, 43-44). The fiduciary duty claims (Counts IV–VI) arise from explicit governance documents (Exhibits 1, 4, 5, 6, 24). The claim for involuntary withdrawal (Count VII) directly tracks the February 2023 Resolutions (Exhibit 1) signed by all Class A Members, being Mr. Blatt and Mr. Goldner at the time. MCC argues "just two examples of too many to itemize" which is wholly insufficient. The broad claim of insufficiency made by MCC renders answering to it impossible, short of simply repeating each portion of the Counterclaim herein and pointing to each element in turn. The Counterclaim and Third Party Complaint passes the vague accusations of MCC. MCC states that there is insufficient proof of fraud when referring to bank transfers, claiming a lack of "corroborating evidence." In reality, Mr. Goldner identified specific transactions, along with the time, date, and to and from which accounts money was transferred, along with assertions that such transfers were without his permission.[10] Mr. Goldner claims Mr. Blatt had circumvented the agreed upon dual authorization measures meant to ensure that no unauthorized transfers could take place.[11] Mr. Blatt agreed to such co-authorizing measures on multiple instances, and, yet, continued to transfer money to himself in spite thereof and without Mr. Goldner's necessary and required consent.[12]

MCC's contentions suffer fatal problems both on the fact that Mr. Goldner's version is deemed to be true for purposes of the Motion to Dismiss and that they are countered by Mr. Goldner's evidence. Specifically: (i) The Option and Loan agreement that MCC claims does not exists, begins on page 9 of Exhibit 1 and is signed by Mr. Blatt on page 12. The section quoted by MCC also does not support their assertion that there should be a separate and additional "Option

---

[10] See: Counterclaim Paragraphs 883-897, 1132-1158 and Exhibit 39
[11] See: Counterclaim Paragraphs 768, 774-798 and Exhibit 41
[12] See: Counterclaim Paragraphs 781, 794 and Exhibit 41

and Loan Agreement." Rather, it expressly states "**this** Resolution **and** the Option and Loan Agreement," (emphasis added) both of which were executed simultaneously on February 13, 2023[13]; (ii) The boilerplate assignment is not a prerequisite, rather an undertaking to agree upon and use standardized assignment agreements that Mr. Blatt or Mr. Goldner "can use" (and not "must" or "shall" use) for further third-party assignments; (iii) MCC's quoted clauses are wholly silent upon availability being a requirement, stating, instead, that MCC shall "**irrevocably** assign to each Member... 8,217 shares of [TECH]" (emphasis added) as soon as the February Resolution and Option and Loan agreements were signed, which they were[14]; and (iv) Mr. Goldner is and was always a Class A Member.

Even on MCC's untenable version that Mr. Goldner was demoted without notice or consent, the February 2023 Resolution defines Mr. Goldner expressly as a Class A Member. In the very first header of the February 2023 Resolution, it defines all "undersigned" signatories as Voting Members of MCC.[15] Further, the MCC OA defines a Voting Member as a Class A Member.[16] As such, Mr. Goldner, as evidenced by his signature on the February 2023 Resolution, could be nothing but a Class A Member and, Mr. Blatt, nor MCC, could frankly not withdraw Mr. Goldner as they allege. Further to this, MCC's contentions that the "conditions precedent" have not been met is also false. MCC is wholly silent upon what such purported "conditions precedent" are because none exist.[17]. This fact is further supported by Mr. Blatt co-signing (alongside Mr.

---

[13] See: Counterclaim Exhibit 1, Pages 2, 9 and 498 with the Resolution beginning on page 2 ending on page 8 of Exhibit 1 and the Option and Loan agreement, a separately executed agreement, starting on Page 9
[14] See: Counterclaim Paragraphs 680-682 and Exhibit 1, specifically Page 2 et seq,
[15] See; Counterclaim Exhibit 1 at Page 2 where it states, "The **undersigned**, being the **Voting Members** of MEGACAP CAPITAL, LLC (the "Company") (emphasis added)"
[16] See: Counterclaim Exhibit 5 at Page 3, clause 7 and 8
[17] See: Counterclaim Paragraph 680 where it references 5 documents that must be completed before for a "transaction that [Mr. Goldner] [is] authorizing," and not the February 2023 Resolutions itself, selfsame being all validly signed and executed regardless and being (1) MegaCap Tech Holding Series Agreement (Exhibit 1, page 7); (2) MegaCap Resolution (Exhibit 1, Page 2); (3) Little Prince Interest Waiver Agreement (Exhibit 37, Page 4); (4)

Goldner) the Interest Waiver and Rebate Agreements (Exhibit 37), selfsame documents signed simultaneously and alternatingly referring to Mr. Blatt and Mr. Goldner as a "Managing Member" of MCC.[18] If Mr. Goldner was withdrawn as a Class A Member, as alleged by MCC, then his signature would not have been on the aforementioned agreements. Fatally, MCC concedes either fraud or theft was inflicted against Mr. Golder in its Motion to Dismiss. As shown above, the February 2023 Resolution unequivocally allocates 8,217 shares to Mr. Goldner, yet MCC now contends that either Mr. Blatt or MCC removed the shares from MCC at or before said signing (indicating fraud since Mr. Blatt permitted Mr. Goldner to sign the Resolution under false pretenses) or, after Mr. Goldner's illegitimate removal, MCC had transferred Mr. Goldner's shares to someone else (entailing theft). In fact, it is out of fear of this very thing that Mr. Goldner requests a nullification of all agreements made by MCC without his expressed authorization.

Equally, MCC cannot claim that Mr. Goldner did not do his due diligence as MCC under Mr. Blatt's exclusive control, stonewalled any attempt by Mr. Goldner to gain any information regarding MCC even withholding crucial tax documentation in the form of K1s that Mr. Goldner was not been provided.[19] Whereas, Mr. Blatt signed and agreed that Mr. Goldner would be receiving a K-1 in Exhibit 35. This lends heavy credence to the argument that the Motion to Dismiss should be denied so that the full extent of the misdeeds can be fully ventilated in a court of law.

Notably and returning to allegations of lack of specificity regarding the fraud perpetrated, the Counterclaim not only satisfies Rule 9(b)—it exceeds it.[20] The pleading provides detailed

---

Little Prince Rebate Agreement (Exhibit 37 Page 2); and (5) MegaCap Option & Loan Agreement (which contains the Flow of Funds diagram) (Exhibit 1, Page 9)

[18] See: Counterclaim Exhibit 37 at Pages 3 and 6, read with Exhibit 5, clauses 3, 23 and 25
[19] See: Counterclaim Paragraph 1214 specifically
[20] MCC cites *Perkins* saying generic references to fraud were dismissed; however, Counterclaim Plaintiff pleads the facts with the specificity and particularity to rise to the elements and pleading standard necessary for fraud.

factual allegations of fraudulent misrepresentations made by MCC to third parties including Flow, Limited Partners ("LPs"), and co-founders. It attaches evidence of: (1) misrepresentations of trustworthiness in contemporaneous text messages from Mr. Blatt;[21] (2) agreements entered into with Mr. Blatt on the basis of said representations and that Mr. Goldner relied upon;[22] (3) untruthfulness of said representations;[23] (4) misrepresentations or attempts to defraud other parties;[24] and (5) MCC's breach of Form 8832 filed with the Internal Revenue Service[25]. These are not speculative allegations—they are hard facts supported by documents, many of which Mr. Blatt himself either authored, co-authored, and/or signed. This stands in stark contrast to Mr. Blatt's own pleadings, which were dismissed for lacking exactly this level of specificity. Contrary to MCC's assertion, the Counterclaim lays out: (i) The specific misrepresentations made by MCC and Mr. Blatt (e.g., unauthorized filings, offer of discounted carry to LPs, false filings claiming single-member LLC status); (ii) The recipients of those misrepresentations (e.g., Flow, Stateless Capital, Bank of America, First Republic); and (iii) The precise timing and nature of these actions (see Exhibits 2-3, 13, 21, 39, 41, 43-45, 47, 49). Each fraudulent act is tied to a specific transaction, legal duty, or contractual framework. The pleading includes emails and chat messages, leaving no ambiguity as to what was said, when, or to whom they were said.

MCC attempts to argue that ¶1155 is conclusory, yet appears to ignore all the banking exhibits and the statement of facts surrounding ¶1155 (which is part of the causes of action). Rather, ¶772 accompanied with Exhibit 39 details Mr. Blatt's alleged bank fraud, wire fraud, ACH fraud, and fraudulent transfers of funds belonging, in part, to Mr. Goldner. Exhibit 41 showcases

---

[21] See: Counterclaim Exhibits 8
[22] See: Counterclaim Exhibits 1, 4, 5, 6, 11, 20, 22, 24, 26, 27, 28, 35, 21, 43, and 47
[23] See: Counterclaim Exhibits 2, 3, 23, 26, 27, 29, 39, 41, and 47
[24] See: Counterclaim Exhibits 7, 13, 35, 41, 43, 44, 47, and 49
[25] See: Counterclaim Exhibit 35

the dual authorization required at First Republic Bank, and Exhibit 21 identifying that it was in fact Mr. Blatt's idea to "commingle" funds. MCC's argument that one paragraph fails to meet Rule 9(b)'s heightened pleading standard is insufficient for a request to dismiss an entire Counterclaim and Third Party Complaint with prejudice. Further, MCC's referencing substantive case law is improper as this case is governed under Delaware law. MCC uses an example of a case where the party filed a complaint "without alleging specific transfers" but it is clear from the Counterclaim that there are allegations of "transactional specifics" such as in ¶769, ¶762, and ¶762 detailing $149,625, $50,000, and $20,000 respectively. Further, MCC's argument that Counterclaim Plaintiffs' claims are "adding complexity to the current case at the expense of the other parties" is factually untrue. MCC cannot escape that this is a complicated case with a complex set of facts, with a plethora of exhibits, and years of business dealings between over a dozen people and/or entities. MCC attempts to argue that the Counterclaim violates Rule 8. MCC is incorrect. The Statement of Facts is cohesively and coherently tied together as a singular narrative as part of a core common nucleus of facts and the claims themselves are legally distinct from one another against Mr. Blatt and the Third Party Defendants. Their source springs from Mr. Blatt's various and protracted misdeeds.

**The Fiduciary Duty Claims Are Grounded in Operative Agreements**

MCC confusingly argues the fiduciary duty claims should be dismissed because there are no duties owed. That is demonstrably false. The Operating Agreements (Exhibits 4, 5, 24), the MCC MOU (Exhibit 6), the February 2023 Resolutions (Exhibit 1), and IRS Form 8832 (Exhibit 35) all establish that: (i) Mr. Goldner and Mr. Blatt were co-managers and co-members; (ii) Both owed fiduciary duties of loyalty and care; and (iii) Major decisions required dual consent. Mr. Blatt's and MCC's illegitimate removal of Mr. Goldner without notice or Mr. Goldner's consent,

11

Mr. Blatt's various defaults and fraudulent statements clearly fall afoul of their fiduciary duties.

**MCC's Procedural Conduct Warrants Denial of the Motion**

Notably, MCC's preposterous statement that "All the MegaCap Counts thus fail to state a claim given this invalid assumption contracted by the incorporated Related Case, which must be accepted as true." falls utterly flat because (i) MCC actually never marked the "RICO Case" as "Related" – in fact, they explicitly tried deceiving this Court by *not* marking it as related; and (ii) the case was **dismissed.** – there is no basis in law or reality that a dismissed case that was filed as **unrelated** would be incorporated into this case as "true." This should not be tolerated by this Honorable Court and MCC's frivolous, untenable and improperly raised argument should be sanctioned as Mr. Blatt and MCC are vexatious litigants.

**Joinder of Third-Party Defendants Is Appropriate and Proper**

MCC also challenges the inclusion of third parties but fails to define who they are referring to. Rather, all the Defendants cited by Mr. Goldner are necessary to this litigation, their involvement is included to ensure full resolution of the controversy under Rule 13 and Rule 14, rendering them **indispensable parties** under Rule 19 and properly joined under Rules 13(h) and 14. MCC fails to explain how this would not serve justice.

**Mr. Goldner Has Not Contradicted Himself on His Status as Member**

MCC argues that Mr. Goldner simultaneously claims to be and not to be a member of MegaCap. This mischaracterizes the Counterclaim and Third Party Complaint. The Counterclaim asks for "restoration of Mr. Goldner's **rights** as a full Class A member and manager of MegaCap (emphasis added)" and not for the reinstatement of his **status** as a Class A Member. Mr. Goldner consistently asserts that he remains a co-owner, member, and manager, and that MCC and Mr. Blatt's false and fraudulent filings and misconduct have wrongfully attempted to change that

12

status. The "rights" Mr. Goldner seeks to "restore" are his rights to access to and control of his MegaCap email addresses, Google Workspace, Flow accounts, Delaware Registered Agent login, GoDaddy logins, bank accounts, shares, documents, filings, accounting books, etc., as Mr. Goldner is entitled to as set out in the MCC OA, the MCC MOU, and February 2023 Resolution. MCC argues that Mr. Goldner inconsistently pleads that he "is and is not" a member of MegaCap. Rather the Counterclaim consistently asserts that **Mr. Goldner has always been a Member** and that **Mr. Blatt falsely claimed otherwise**—both in legal filings and to third parties. That Mr. Blatt and MCC fabricated or filed false withdrawals (Exhibits 2 and 3) does not make Mr. Goldner's status contradictory. Rather, it underscores wrongful conduct that gives rise to the Counterclaim and rebuts what MCC falsely contends is an inherent contradiction.

**The 2023 Resolutions Were In Fact Completed and Are Binding and Enforceable**

The February 2023 Resolutions were validly executed by all parties and are binding corporate instruments and governing documents. MCC's argument that their terms were "not completed" confuses performance with enforceability. Mr. Blatt and MCC's breach of these resolutions by removing Mr. Goldner in violation of their terms is what gives rise to the cause of action—not a contradiction. Further, incredulously, MCC seems to misunderstand that anything plead in a Counterclaim must be deemed as true at this stage. Instead, MCC attempts to introduce factual contestations that are not in the Counterclaim or Exhibits. Without this extrinsic evidence, which is provably and observably false, MCC is left with merely arguing that the February 2023 Resolutions were not completed without admissible support. However, the February 2023 Resolutions were fully executed by all members, including Mr. Blatt. The fact that Mr. Blatt and MCC later violated those Resolutions' terms by unilaterally removing Mr. Goldner does not mean

the Resolutions were not "completed"—it means they were **breached**, and that breach is part of what gives rise to many causes of action.

**There Is No Contradiction Regarding Mr. Reiter's Redeemed Shares or Trust Structure**

The Counterclaim clearly sets forth the redemption of Rod Reiter's shares (Exhibit 9). As to MCC's statement that "[Mr.] Reiter's redeemed shares were and were not in trust," the Counterclaim lays out the redemption clearly (Exhibit 9). Mr. Reiter's equity was bought out pursuant to a redemption agreement, and Mr. Reiter's redemption is clearly bound by the MegaCap Capital Operating Agreement (Exhibit 5)'s Paragraph 12. Any reference to a trust refers to discussions around transitional holding structures, not contradictory claims. There is no inconsistency, and the documents speak for themselves. Rather, it was MCC that claimed Mr. Reiter's shares are held "in trust" by MCC in the Redemption Notice MCC sent to Mr. Goldner, a fact Mr. Goldner contests which creates an actual *factual* dispute whereupon a request for declaratory relief is appropriate.[26] MCC confuses factual versus legal disputes and that a prayer for relief is able to request damages for misconduct that MCC and Mr. Blatt committed.

Mr. Goldner's prayer for declaratory relief is not a contradictory statement nor is it an admission of MCC, nor Mr. Blatt's version. The paragraphs MCC cited (738, 1204, 1233(i) and 1233(v)), support Mr. Goldner's contention that the shares are not in trust and should have been divided between Mr. Goldner and Mr. Blatt at the time of Mr. Reiter's withdrawal, rather than MCC's position they were held in trust. MCC's citation of them as a supposed showing a contradiction is non-sensical. Mr. Goldner **never** signed a unilateral issued redemption.

**Email Server Access Does Not Establish Legal Withdrawal**

---

[26] See: Counterclaim Paragraph 702 and 703

MCC's removal of Mr. Goldner's access to internal systems, internal communications platforms, or email servers does not equal to or effectuate legal withdrawal from *any* MegaCap entity. There is no provision in any Operating Agreement allowing email account access to define membership status. Under the MCC OA (Exhibit 5), a withdrawal must be **formal, in writing, and consistent with Member consent**. No such thing exists from January 2023 despite what is alleged. Mr. Goldner did not sign any such withdrawal, nor was one unanimously agreed to. Instead, the stripping of access to the commandeered Google Workspace is grounds for removal.

**Operating Agreements Bar Unilateral Withdrawal Actions**

The problems with MCC's version are as myriad as they are obvious and inescapable. MCC's claim that the February 2023 Resolution was invalid, and that the MegaCap Operating Agreement is the governing document, does not assist them. The Operating Agreements require mutual consent for member changes and do not allow for unilateral removal without following the strict and mandatory prerequisites set out in the Operating Agreement, the same requirements MCC and Mr. Blatt utterly ignored.[27] There are no provisions for unilateral, secret, and involuntary alteration of Membership status from Class A to Class B. Consent is required to withdraw and reissue.[28] Further, the rights MCC relies upon to remove Mr. Goldner could not even accrue to Mr. Blatt as the preconditions were not met.[29] Albeit in a gross mischaracterization, MCC admits in their purported withdrawal in paragraph 5 that there is a "dispute" between Mr. Blatt and Mr. Goldner, entailing that clause 80 of the Operating Agreement comes into operation, that such dispute "shall be exclusively resolved in accordance with the procedures of this section." MCC

---

[27] See: *inter alia* Counterslaim Exhibit 5 at pages 3, 7, 8, 10, and 14 to 18
[28] See: *inter alia* Counterclaim Exhibit 5 at pages 3, specifically that, if Mr. Blatt is so be believed, Mr. Goldner had to consent to accept the reissued Class B Units and, as a general position, shares, units and/or equity cannot be titled to anyone without their consent, acceptance and agreement
[29] See: *inter alia* Counterclaim Exhibit 5 at pages 10 and 15 to 18

15

and Mr. Blatt's withdrawal of Mr. Goldner is unequivocally invalid and void for noncompliance with the strict language and inflexible and irrevocable processes laid out in the Operating Agreement in general and clause 80 in specific.[30] MCC's purported withdrawal notice is therefore utterly invalid for non-compliance with the MCC OA and renders them in breach of same. Further, their waiving of the arbitration rights in approaching this Honorable Court, as will be addressed below, does not permit them to otherwise ignore the processes they had agreed to. MCC cannot deprive Mr. Goldner of his rights as set out in the Operating Agreement and as they existed at the time of the purported Withdrawal Notice. Regardless, MCC and Mr. Blatt must try to escape the February 2023 Resolutions as their attempted removal of Mr. Goldner is expressly forbidden, specifically stating, "… In the interest of clarity, that means that **all Sections of the operating agreement relating to Redemption of Membership Units or Involuntary Withdrawal are hereby voided** upon fulfillment of the terms of this agreement, such that **no Class A member can be removed as a Class A Member or Manager** to any degree by the other Class A Members, and that any such attempted removal shall be void upon completion of the terms of this resolution.[31]" (emphasis added).

Knowing that the 2023 Resolutions were validly executed and are in force, MCC and Mr. Blatt attempt an alternative route around the strict language set out above, fabricating some way to demote Mr. Goldner to Class B, and deciding upon a secret, unilateral, and *ultra vires* notice not communicated to Mr. Goldner until months later. In fact, the Resolutions counter the demotion narrative by referring to Mr. Goldner as an "undersigned" "Voting Member," that is, a Class A

---

[30] See: *inter alia* Counterclaim Exhibit 2 at page 64 read with Exhibit 5 at page 16 *et seq*
[31] See: Counterslaim Exhibit 1 at page 2 and 3

member.[32]

### Mr. Blatt and MCC Waived Any Right to Arbitrate by Litigating in This Court

MCC's claim that certain issues belong in arbitration is waived by Mr. Blatt and MCC's conduct and filings. Mr. Blatt first filed three complaints in this action and another in federal court under MCC's name, and sought injunctive relief in state court regarding MegaCap. These actions invoke the jurisdiction of this Court and preclude enforcement of any arbitration clause.[33] Mr. Blatt's own "Verified Complaint" lists "MegaCap" (93) times establishing a common core nucleus of facts of these issues. Mr. Blatt also sued Dr. Divilov. The arbitration provision was waived.

### Opportunity to Cure Is Inapplicable and Irrelevant

MCC and Mr. Blatt argue that Mr. Goldner failed to provide them with an opportunity to cure alleged breaches. This argument is misplaced. Many of the breaches are not curable—such as fraudulent and forged redemptions, unilateral filings, litigation misconduct, direct harm, and unauthorized lawsuits. The Counterclaim arises from breaches that caused direct harm. MCC elected to ignore clause 80 *et seq* of the Operating Agreement by filing their purported Withdrawal Notice, which set out the process to provide opportunities to cure. Moreover, litigation over these issues has been active for years—notice and opportunity are long since satisfied, and the relevant

---

[32] See: Counterslaim Exhibit 1 at page 2 and 6 read with Exhibit 5 at page 3; MCC and Mr. Blatt's breach of these governing documents and the attempted removal of Mr. Goldner, therefore, triggers Mr. Blatt's own involuntary withdrawal, not Mr. Goldner's.

[33] In fact, this is a well-established rule by the Supreme Court of the United States in *Morgan v. Sundance, Inc.*, 142 U.S. 1708, 1713 (U.S., 2022). In *Morgan v. Sundance*, the Supreme Court held that a party waives its right to arbitrate when it acts inconsistently with that right, regardless of whether the opposing party was prejudiced. 142 S. Ct. 1708, 1713, 596 U.S. 411, 417–19 (2022). The Court explained that "waiver, we have said, is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713, 596 U.S. 411, 417 (U.S., 2022). It further clarified that "by litigating too long," a party may waive "its right to stay litigation or compel arbitration under the FAA." *Morgan*, 142 S. Ct. at 1714. Just as *Sundance* defended the lawsuit for eight months as if no arbitration agreement existed, Mr. Blatt filed a complaint, a motion to strike, an opposition to a motion to dismiss, and sought extensions of time to respond to filings—all without invoking any arbitration clause—thereby acting inconsistently with the right to arbitrate and waiving it under *Morgan*. While the Court does not impose a hard and fast rule for how long a party must litigate to effectuate waiver, the key inquiry is whether they knowingly relinquished their right to arbitrate by acting inconsistently with that right, which Blatt did.

statute of limitations governs any pre-suit requirements. Further, MCC chooses once again to ignore the MCC OA (Exhibit 5). This time, MCC chooses to ignore the "Equitable Remedies" section (Paragraph 81), enabling a party to seek injunctive relief as has been done in this instant case (D.E. 93). Moreover, MCC was placed on notice several times and elected to ignore such notices. It cannot now complain about not having an opportunity to cure. Equally, Mr. Blatt cannot claim that the findings of the R&R against him should be applied to the Counterclaim. The Counterclaim stands to be considered on its own.

Even if any claim in the Counterclaim could be construed as arbitrable, Mr. Blatt and MCC **waived any right to compel arbitration** by voluntarily filing in both federal and state court.[34] Mr. Blatt filed the original Verified Complaint in Florida state court, a Preliminary Injunction motion in the same case, and subsequently removed to federal court—all without invoking arbitration at the outset. He also filed suit under MegaCap's name in federal court (Case No. 1:24-cv-24385), again without seeking arbitration. Courts have consistently held that such conduct constitutes waiver, particularly where, as here, the party initiating litigation is the same party later attempting to enforce arbitration.

**Mr. Goldner Has Been Deprived Access to Mr. Goldner's 8,217 Shares of [TECH]**

Everything pled in the Counterclaim ought to be construed as true. It is not conclusory to state that Mr. Goldner has been dispossessed of his 8,217 shares of [TECH] as this is supported by the MegaCap February 2023 Resolutions. Further, MCC and Mr. Blatt once again raise new factual allegations in the Motion to Dismiss that "Tech Holding…is owned by MegaCap" without saying **which** MegaCap entity and without providing any basis that "MegaCap" owns "Tech Holding." Again, this is a factual dispute that falls outside the scope of a Motion to Dismiss. Additionally,

---

[34] See: Counterclaim Paragraph 72

MCC claims that MegaCap has "three members" without stating **who** the Members are. However, MCC failed to comply with a Scheduling Order of the Honorable Court. Mr. Blatt was required to join any related party by February 17, 2025, and, failing which, Mr. Blatt now acknowledges the existence of undisclosed additional parties after the time to add them has elapsed. Equally, Mr. Blatt must have known that these parties must be added, yet was wholly silent upon their existence, even electing not to mention them in his case that was dismissed for, again, failing to comply with a scheduling order. Regardless, MCC and Mr. Blatt are incorrect and every required party known to Defendants has already been added through the Counterclaim and Third Party Complaint. MCC also misrepresents the law. It was MCC and Mr. Blatt that deprived Mr. Goldner of his rights. Should the Honorable Court find in Mr. Goldner's favor and grant Mr. Goldner's declarator under Count XVIII, then the actions by MCC and Mr. Blatt after the illegitimate removal of Mr. Goldner are void. Any transfers of shares or equity, as well as admission of new members, would have no legal effect.

Further, Mr. Goldner is entitled to seek restoration of the *status quo* before his illegitimate removal, including full legal recognition and affirmation of his ownership of MCC and the related entities. If MCC had sold or transferred Mr. Goldner's interests to third parties and that transaction is voided by this Honorable Court, then the liability is Mr. Blatt's to bear. These purported Members have, to the totality of Mr. Goldner's knowledge and considering their existence was first revealed to Mr. Goldner in this Motion to Dismiss, no claim against him, and there is no nexus directly between them and Mr. Goldner. MCC simply does not state **which** causes of actions ought to have these unnamed other parties included.[35] Mr. Blatt contends that he is not personally liable for the damages he inflicted on Mr. Goldner, deflecting that it was MegaCap or Tech Holding.

---

[35] In contrast, Defendants' Motion to Dismiss against Mr. Blatt's Complaint was clear as to what parties were indispensable to what causes of action.

However, there is liability for Mr. Blatt, in his personal capacity and his capacity as a co-Member. MCC and Mr. Blatt's position is absurd, it cannot be believed that Mr. Goldner would accept $1.70 in exchange for years of work and millions of dollars of transactions, management fees, carried interest and equity. Mr. Blatt's and MCC's version is unbelievable.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety. Alternatively, Counterclaim Plaintiffs respectfully request leave to amend under Rule 15(a)(2).

Respectfully submitted,

By: /s/ *Stanley Q. Casey, Esq.*
Stanley Q. Casey, Esq.
Florida Bar No.: 1031011
LAW OFFICES OF STANLEY Q. CASEY PLLC
900 West Ave, Suite 631
Miami Beach, Florida 33139
Telephone: (305) 946-1510
Fax: (305) 203-4349
Email: scasey@sqcaseylaw.com
*Attorney for Defendants/Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 11th day of April 2025, a true and correct copy of the above and foregoing has been furnished, electronically, through the CM/ECF system, to all counsel of record.

By: /s/ *Stanley Q. Casey, Esq.*
Stanley Q. Casey, Esq.